UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PIM SHIH,

   *Plaintiff*,

 v.

COMMUNITY DEVELOPMENT
FINANCIAL INSTITUTIONS FUND,
*et al.*,

   *Defendants*.

Civil Action No. 24-1378 (LLA)

**MEMORANDUM OPINION**

  Plaintiff Pim Shih, proceeding pro se, brings this suit against the Community Development Financial Institutions Fund ("CDFI Fund") and the U.S. Department of the Treasury. ECF No. 1. Mr. Shih claims that two private organizations that disburse monies from the CDFI Fund treated him unfairly and that the CDFI Fund ignored his complaints about them. *Id.* ¶¶ 22, 38; ECF No. 11, at 2.[1] Defendants now move to dismiss the complaint. ECF No. 10. For the reasons explained below, the court will grant Defendants' motion and dismiss the complaint.

  **I.**  **STATUTORY AND REGULATORY BACKGROUND**

  The CDFI Fund was established as part of the Treasury Department by the Riegle Community Development and Regulatory Improvement Act of 1994, 12 U.S.C. § 4701 *et seq.* The purpose of the Fund is to "promote economic revitalization and community development through investment in and assistance to community development financial institutions." 12 U.S.C.

---

[1] The citations for ECF Documents 11 and 13 refer to the PDF page numbers, as the documents themselves do not contain internal page numbers.

§ 4701(b). The government does not make direct loans to individuals from the CDFI Fund; instead, the Fund provides financing to local Community Development Financial Institutions ("CDFIs"), which in turn "provide loans, investments, financial services and technical assistance to underserved populations and communities." Community Development Financial Institutions Fund, *About Us*;[2] *see Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022) ("The Court may take judicial notice of information posted on official public websites of government agencies."). Notably, "[a] CDFI shall not be an agency or instrumentality of the United States, or any State or political subdivision thereof." 12 C.F.R. § 18005.201(b)(6).

The Treasury Department has issued regulations to ensure nondiscrimination in the provision of federal financial assistance through its programs, including the CDFI Fund. 31 C.F.R. §§ 22.1, 22.4; *see* Community Development Financial Institutions Fund, *Non-Discrimination Statement and Civil Rights Information*.[3] An individual who believes that he has been discriminated against in connection with the CDFI Fund program may file a complaint with the Treasury Department's Office of Civil Rights and Equal Employment Opportunity. 31 C.F.R. § 22.7; *see* U.S. Department of the Treasury, *Office of Civil Rights and Equal Employment Opportunity*.[4] The final determination of such a complaint is subject to judicial review. 31 C.F.R. § 22.11.

---

[2] *Available at* https://perma.cc/7PE8-GZUC.

[3] *Available at* https://perma.cc/CBX5-4S2R.

[4] *Available at* https://perma.cc/S9FM-FACT.

## II. FACTUAL BACKGROUND

The following factual allegations drawn from Mr. Shih's complaint, ECF No. 1, are accepted as true for the purpose of evaluating the motion before the court, *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1250 (D.C. Cir. 2005).

Mr. Shih is a "minority business owner" who identifies as an "Asian-American and [a] Christian." ECF No. 1 ¶ 4. Mr. Shih applied to two CDFIs—the Greater Newark Enterprise Corporation ("GNEC") and the Union County Economic Development Corporation ("UCEDC")—seeking funds for his business. *Id.* ¶¶ 6, 9, 11-14. "[D]espite [his] robust FICO score" and "business serving the Newark, NJ area," *id.* ¶ 11, both organizations declined to loan Mr. Shih monies from the CDFI Fund, *id.* ¶¶ 11-14.

In August 2023, Mr. Shih sent an email to the CDFI Fund "expressing dissatisfaction with the difficulties encountered in obtaining financial assistance" from GNEC and UCEDC. *Id.* ¶ 7. Specifically, he wrote that his "experience this year and last year is [that] it is harder to approach CDFI than regular loaners" and that "[t]he people with CDFI money to give don't seem to care about the community and making their country better. They seem to want to make companies jump through hoops and seem judgemental [sic] and not helpful at all, or even discriminatory." ECF No. 15-1 (Mr. Shih's initial letter to the CDFI Fund); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."). Mr. Shih alleges that the CDFI Fund responded the following day by "acknowledging [his] concerns and requesting additional documentation of specific encounters with CDFI-approved organizations." ECF No. 1 ¶ 8. He maintains that he "provided details regarding interactions with GNEC and UCEDC," *id.* ¶ 9, and that the CDFI Fund "assured [him] that a representative would contact [him]

within two business days," *id.* ¶ 10. "Despite CDFI's initial acknowledgement and assurance of a prompt response," Mr. Shih did not "receive[] any communication for three months." *Id.* ¶ 15. In September 2023, Mr. Shih "emphasized [his] protected status as an Asian American and believer [in] Jesus Christ The Lord," and he alleges that the CDFI Fund's "lack of response may be linked to discrimination based on these factors." *Id.* ¶ 16.

### III.   PROCEDURAL HISTORY

In May 2024, Mr. Shih brought this case against the CDFI Fund and the Treasury Department seeking declaratory, compensatory, and injunctive relief. ECF No. 1, at 16. In Count I, Mr. Shih contends that the CDFI Fund's administration of its program violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and 42 U.S.C. § 1983. ECF No. 1 ¶¶ 22-27. In Count II, he alleges that the CDFI Fund negligently breached its duty of "ensuring fair and non-discriminatory practices" when processing his loan application(s). *Id.* ¶¶ 28-29. In Count III, Mr. Shih asserts that the CDFI Fund violated Title VI by discriminating against him. *Id.* ¶¶ 30-36. And in Count IV, he claims that the CDFI Fund's "prolonged silence and inaction following [his] expression of concerns surrounding the discriminatory application process" constitutes retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ECF No. 1 ¶¶ 37-43.

In January 2025, Defendants filed a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). ECF No. 10, at 1. Mr. Shih quickly filed an opposition. ECF No. 11. Because Mr. Shih filed his opposition before the court had an opportunity to advise him of his obligations under *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988), the court issued a *Fox*/*Neal* order and allowed him to file a supplemental opposition brief. ECF No. 12. Mr. Shih filed his supplemental opposition

in February 2025, ECF No. 13, and Defendants filed a reply in March 2025, ECF No. 15. The motion to dismiss is now ripe for disposition. ECF Nos. 10, 11, 13, 15.

### IV.    LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 178 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "may consider materials outside the pleadings." *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms.*, 402 F.3d at 1253). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off.*

*of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice.  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Complaints filed by pro se litigants are generally held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  This liberal construction for pro se plaintiffs "is not, however, a license to ignore the Federal Rules of Civil Procedure."  *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009).  Thus, "even a pro se plaintiff must meet his burden of proving subject matter jurisdiction to survive a Rule 12(b)(1) motion to dismiss."  *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014).

## V.    DISCUSSION

As a threshold matter, it is important to understand who this case is against and what it is about.  In his complaint, Mr. Shih largely alleges discrimination against him by GNEC and UCEDC.  ECF No. 1 ¶¶ 11-12 (GNEC), ¶¶ 13-14 (UCEDC), ¶ 17 (alleging that "the actions and inaction of CDFI, GNEC, and UCEDC amount to discrimination, negligence, and a failure to adhere to CDFI's mission of promoting economic opportunity for underserved communities").  But Mr. Shih does not name GNEC and UCEDC as Defendants in his complaint, *id.* ¶ 5, and while these organizations are certified to loan money from the CDFI Fund, they are not part of the federal government, 12 C.F.R. § 18005.201(b)(6).  Accordingly, Mr. Shih's suit is best understood as a suit against the CDFI Fund and Treasury Department for (1) failing to prevent discrimination in the administration of the CDFI Fund's program (Counts I-III); and (2) failing to respond to his complaints about GNEC and UCEDC (Count IV).  With that in mind, the court turns to the counts

in Mr. Shih's complaint and concludes that it lacks subject-matter jurisdiction over Counts I-III and that Mr. Shih has failed to state a claim upon which relief can be granted on Count IV.

### A.     Subject-Matter Jurisdiction (Counts I-III)

The court begins, as it must, with subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998); *see Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (explaining that when a defendant files a motion to dismiss pursuant to both Rule 12(b)(1) and Rule 12(b)(6), "the court must first examine the Rule 12(b)(1) challenge[]" because a lack of subject-matter jurisdiction renders all other defenses and objections moot). The court concludes that the United States has not waived its sovereign immunity for Mr. Shih's claim for monetary relief as it pertains to Counts I-III, that he lacks standing to pursue a claim for injunctive relief, and that he is not entitled to declaratory relief.

#### 1.     Monetary relief

As a general matter, "the United States cannot be sued without its consent." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). Congress may waive the United States' sovereign immunity for certain claims, but such waiver "must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). Before a plaintiff can sue the United States, he "bears the burden of establishing that sovereign immunity has been abrogated." *Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012). If he fails to do so, he cannot "establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006).

While Mr. Shih does not tie any specific request for relief to any particular count in his complaint, he seeks "[a]n award of compensatory damages to remedy the tangible and intangible

7

harms suffered by [him]." ECF No. 1, at 16.  Defendants argue that the United States has not waived its sovereign immunity to be sued for money damages for some of Mr. Shih's claims and that Mr. Shih has failed to exhaust his administrative remedies under the FTCA as it applies to others.  The court agrees.

*a.     Count I*

In Count I, Mr. Shih appears to invoke Title VI, Section 1983, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as bases on which he can seek monetary relief.  ECF No. 1 ¶¶ 22-27.  The court addresses each in turn.

*Title VI.*  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  "Generally, private plaintiffs may only use Title VI 'to sue a discriminatory fund recipient to terminate the offending discrimination[]'; they may not sue 'the enforcing agency.'" *Kanam v. Off. of the Sec'y of Educ.*, No. 20-CV-123, 2020 WL 3832916, at *3 (D.D.C. July 8, 2020) (quoting *Wash. Legal Found. v. Alexander*, 778 F. Supp. 67, 69 (D.D.C. 1991)).[5] While Mr. Shih argues that the CDFI Fund is "a recipient of federal funds," it is not.  ECF No. 1 ¶ 30.  Instead, the CDFI Fund is an agency within the Treasury Department that disburses federal funds to CDFIs like GNEC and UCEDC.  *See* 12 U.S.C. § 4701 *et seq.*  Consequently, while Mr. Shih might have a Title VI claim against GNEC or UCEDC, the United States has not waived

---

[5] "A plaintiff may in rare cases sue a funding agency under Title VI where the agency has 'consciously and expressly adopted a policy [abdicating] its statutory duty' by continuing to fund discriminatory educational institutions."  *Kanam*, 2020 WL 3832916, at *3 n.4 (alteration in original) (quoting *Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C. Cir. 1973)).  Mr. Shih's allegations, even generously construed, do not rise to this level.

*its* sovereign immunity to permit a Title VI claim against the CDFI Fund or the Treasury Department.[6]

*Section 1983.*  Mr. Shih also purports to bring Count I under Section 1983.  ECF No. 1 ¶ 27.  That statute provides a civil cause of action against "[e]very person" who, while acting "under color of [state law]," deprives an individual of their constitutional rights.  42 U.S.C. § 1983; *Settles*, 429 F.3d at 1104.  As a general rule, however, the statute "does not apply to federal actors." *Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 116 (D.D.C. 2012).  The determinative consideration is whether the defendant was acting under the color of *state law* when he violated the plaintiff's rights.  *See Williams v. United States*, 396 F.3d 412, 413-16 (D.C. Cir. 2005).  Here, it is evident that the "state law" component is missing, as Mr. Shih is suing two *federal* defendants for their actions in overseeing the *federal* CDFI Fund program.  Accordingly, the United States has not waived its sovereign immunity for a claim under Section 1983 as it pertains to Mr. Shih's allegations.

*Bivens.*  In his supplemental opposition, Mr. Shih invokes *Bivens* as a basis under which he can seek monetary relief against Defendants.  ECF No. 13, at 1-2.  The problem with this argument is that the *Bivens* remedy, in the limited circumstances where it is available, *see Hernández v. Mesa*, 589 U.S. 93, 102 (2020), is only available against an individual federal officer or employee.  Here, Mr. Shih has sued the Treasury Department and the CDFI Fund, one of the Treasury Department's component agencies, and the Supreme Court has soundly rejected the notion that *Bivens* should be extended to federal agencies as opposed to individuals.  *Fed. Deposit*

---

[6] While Defendants do not press this argument and instead seek dismissal of Mr. Shih's Title VI claim under Rule 12(b)(6), ECF No. 10, at 8-9, this court has an independent obligation to consider its own jurisdiction, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

*Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."). *Bivens* thus fails to provide a basis for this court's jurisdiction.

### b.     Count II

In Count II, Mr. Shih invokes the FTCA, which provides "a limited waiver of sovereign immunity that makes the federal government liable . . . for certain torts of federal employees acting within the scope of their employment." *Johnson v. Veterans Affs. Med. Ctr.*, 133 F. Supp. 3d 10, 14-15 (D.D.C. 2015).[7] In order to sue under the FTCA, however, a plaintiff must first exhaust his administrative remedies by presenting the relevant agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987); 28 U.S.C. § 2675(a). "If a plaintiff fails to properly exhaust his remedies, the Court lacks jurisdiction over his subsequent tort claims." *Wiggins v. Brennan*, 308 F. Supp. 3d 274, 276 (D.D.C. 2018).

In moving to dismiss, Defendants argue that Mr. Shih's August 2023 email to the CDFI Fund was insufficient to exhaust his administrative remedies because Mr. Shih did not allege discrimination or seek a sum certain. ECF No. 10, at 7-8. In response, Mr. Shih asserts that his email constituted "substantial compliance with exhaustion requirements" under the FTCA. ECF No. 11, at 2. The court agrees with Defendants.

---

[7] In FTCA cases like this one, the United States is the only proper defendant. *See, e.g.*, *Hall v. Admin. Off. of the U.S. Courts*, 496 F. Supp. 2d 203, 206 (D.D.C. 2007). While Mr. Shih named the CDFI Fund and the Treasury Department, not the United States, ECF No. 1 ¶ 5, in light of his pro se status, the court will "treat[] [his] claim as if it had been brought against the United States directly," *Chandler v. Fed. Bureau of Prisons*, 226 F. Supp. 3d 1, 6 n.3 (D.D.C. 2016).

To begin, Mr. Shih's initial email was not sufficient to put Defendants on notice of any claim against *them*. *See GAF Corp.*, 818 F.2d at 919. Instead, Mr. Shih complains of his "poor experience relating" to his attempts to receive funds from two CDFI-certified organizations, which he believes "go[es] against the mission of [the] CDFI [program]." ECF No. 15-1. While Mr. Shih at one point suggests that "[t]he people with CDFI money . . . seem judgemental [sic] and not helpful at all, or even discriminatory," *id.*, he does not provide any detail suggesting that *federal* actors, as opposed to GNEC and UCEDC, mistreated him, *see* 12 C.F.R. § 18005.201(b)(6) (explaining that a CDFI like GNEC and UCEDC cannot be an "agency or instrumentality of the United States, or any State or political subdivision thereof"). And while Mr. Shih now complains that the CDFI Fund discriminated against him by not timely responding to his claims, ECF No. 1 ¶¶ 16-17, he nowhere suggests that he put Defendants on notice of *that* claim, *see generally id.* Even if Mr. Shih had, he failed to request a sum certain, which is a separate basis on which to conclude that he did not exhaust his administrative remedies. *GAF Corp.*, 818 F.2d at 919 ("Section 2675(a) requires a claimant to file . . . a sum-certain damages claim."). Accordingly, Mr. Shih cannot show that he exhausted his administrative remedies and therefore cannot avail himself of the FTCA's waiver of sovereign immunity as it pertains to Count II.

### c.     Count III

Mr. Shih relies on Title VI as the sole basis for Count III. ECF No. 1 ¶¶ 30-36; ECF No. 11, at 2. As explained above, the United States has not waived its sovereign immunity to permit a Title VI claim against the CDFI Fund or the Treasury Department. *See supra* Part V.A.1.a.

### 2.      Injunctive relief

In addition to monetary compensation, Mr. Shih seeks "[i]njunctive relief mandating CDFI to reassess [his] application in a non-discriminatory manner and to implement corrective measures to prevent future discrimination." ECF No. 1, at 16.  The United States has waived its sovereign immunity for injunctive and declaratory relief under the Administrative Procedure Act, 5 U.S.C. § 702, but in order to invoke this court's subject-matter jurisdiction, Mr. Shih must have standing to bring this claim.  To satisfy the constitutional requirement for standing, a plaintiff must have: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Mr. Shih has sufficiently alleged an injury in fact—he did not receive the loans he wanted—but he fails at the second and third steps.  Specifically, at no point in his complaint does he allege that Defendants, the CDFI Fund and the Treasury Department, denied his loan applications.  To the contrary, he places that blame squarely on GNEC and UCEDC, ECF No. 1 ¶¶ 11-14, who are not parties to this suit.  And because Defendants were not responsible for assessing his loan applications, no relief from this court would redress his injury.  *See Citizens Alert Regarding the Env't v. U.S. Env't Prot. Agency*, 259 F. Supp. 2d 9, 17 n.7 (D.D.C. 2003).[8]

---

[8] As for Mr. Shih's request for "corrective measures," ECF No. 1, at 16, he can make such a request through the Treasury's Office of Civil Rights and Equal Employment Opportunity.  31 C.F.R. § 22.7; *see* U.S. Department of the Treasury, *Office of Civil Rights and Equal Employment Opportunity*, https://perma.cc/S9FM-FACT.

### 3. Declaratory relief

Mr. Shih also seeks "[a] declaration from the Court affirming CDFI's violation of the Civil Rights Act, negligence, and breach of duty to promote economic opportunity." ECF No. 1, at 16. But where, as here, the court has found that the plaintiff has "not alleged a cognizable cause of action," it has "no basis upon which to [award] declaratory relief." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (explaining that "the availability of [declaratory] relief presupposes the existence of a judicially remediable right" (alteration in original) (quoting *C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002))).

\*   \*   \*

Accordingly, the court lacks subject-matter jurisdiction over Mr. Shih's claims in Counts I-III.

### B. Merits (Count IV)

Turning to the merits, Mr. Shih argues in Count IV that "CDFI's prolonged silence and inaction following the plaintiff's expression of concerns surrounding the discriminatory application process constitute retaliation for protected activity under [Title VII]." ECF No. 1 ¶ 38. Defendants do not dispute that the United States has waived its sovereign immunity for claims of retaliation under Title VII—nor could it. *See Rochon v. Gonzales*, 438 F.3d 1121, 1216 (D.C. Cir. 2006). Instead, Defendants argue that Mr. Shih has failed to state a claim upon which relief can be granted under Rule 12(b)(6). ECF No. 10, at 9. Again, the court agrees with Defendants.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The trouble for Mr. Shih, however, is that he may only bring such a claim "against his . . . *employer*." *Young v. Sullivan*,

13

733 F. Supp. 131, 132 (D.D.C. 1990). Mr. Shih nowhere alleges that he was employed by Defendants; to the contrary, he alleges that he is "the founder and owner of The Set International LLC," which is "a minority-owned small business dedicated to serving the interests of Newark NJ among other areas." ECF No. 1 ¶ 18. In the absence of an employment relationship, Mr. Shih has failed to state a claim upon which relief can be granted under Title VII.

## VI.  CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion to dismiss, ECF No. 10, and dismiss Counts I-III without prejudice and Count IV with prejudice. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   August 4, 2025